UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

----------------------------------------------------

STACY KELLE HUGHES,

                Plaintiffs,

    v.

THE STATE OF LOUISIANA, through the
Louisiana Department of Public Safety and
Corrections; and
SECRETARY JAMES LeBLANC, in his official
capacity,

                Defendants.

----------------------------------------------------

**COMPLAINT**

**CIVIL ACTION**

**NO. 17-cv-_____**

**JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down. God bless you all."

- President George H. W. Bush, July 26, 1990

Bizer & DeReus

Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

1.     Plaintiff STACY KELLE HUGHES (herein after "MR. HUGHES") is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is his expressed, preferred, and most effective means of communication. MR. HUGHES was arrested and was on probation/parole (hereinafter "Probation") with the State of Louisiana until approximately September of 2017. In September of 2017, MR. HUGHES was arrested and incarcerated. However, until his arrest and incarceration in September of 2017, MR. HUGHES was on Probation with the State of Louisiana and a condition of his Probation was that he would meet with an officer and/or submit periodic reports on at least a monthly basis. THE STATE OF LOUISIANA, Through the Department of Public Safety and Corrections (hereinafter "THE STATE OF LOUISIANA") and SECRETARY JAMES LeBLANC, in his official capacity, (collectively "DEFENDANTS") have repeatedly discriminated against MR. HUGHES by failing and/or refusing to provide auxiliary aids and services necessary to ensure effective communication with MR. HUGHES regarding complex legal matters. As a result, MR. HUGHES was unable to meaningfully engage in the Probation services provided by THE STATE OF LOUISIANA. Due to the discrimination he has suffered, MR. HUGHES has suffered loss of educational opportunities and invasion of his civil rights. MR. HUGHES seeks declaratory relief; compensatory and nominal damages; and attorneys' fees and costs to redress DEFENDANTS' unlawful discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*.; and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794.

## THE PARTIES

2.     Plaintiff MR. HUGHES is an individual who was residing in the Shreveport area in Louisiana. MR. HUGHES is profoundly deaf and communicates primarily in American Sign Language. Additionally, MR. HUGHES is illiterate and cannot read or write English. He is substantially limited in the major life activities of hearing, speaking, and reading, and is a qualified person with a disability

within the meaning of the ADA and the Rehabilitation Act.

3.      THE STATE OF LOUISIANA, Through the Louisiana Department of Public Safety and Corrections is a state government.

4.      SECRETARY JAMES LeBLANC is responsible for the functioning and control of all of the programs within the Department of Corrections and is sued in his official capacity for declaratory, injunctive, and equitable relief and attorneys' fees/costs pursuant to the ADA and the Rehabilitation Act pursuant to the doctrine of *Ex parte Young*.

5.      As the operator and administrator of the probation and parole services discussed below, the STATE OF LOUISIANA is obligated to comply with the requirements of the ADA.

6.      DEFENDANTS are obligated to comply with the requirements of the ADA.

## JURISDICTION & VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for plaintiff's claims arising under federal law.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because DEFENDANTS reside within the jurisdiction of this District and a substantial part of the events that give rise to the claims occurred in this District.

## STATEMENT OF FACTS

9.      MR. HUGHES is profoundly deaf and communicates primarily in American Sign Language (ASL).

10.     MR. HUGHES requires auxiliary aids and services to communicate effectively regarding legal matters.

11.     MR. HUGHES is illiterate and cannot read or write English. MR. HUGHES requires auxiliary aids and services to communicate effectively in a legal setting.

12.    Upon information and belief, at a date in the past MR. HUGHES was released from prison and transitioned into the supervision of Probation and Parole ("Probation and Parole"), a subdivision of the Louisiana Department of Public Safety and Corrections.

13.    Upon information and belief, throughout his entire time under the supervision of Probation and Parole, MR. HUGHES was not given a sign language interpreter or other auxiliary aid to assist him with determining how he would attend his Probation service, what his obligations were, what he reporting requirements were, and the specifics activities and conduct that he was allowed to participate in and the activities and conduct that he was not allowed to participate in.

14.    Further, as has been learned by undersigned counsel, officers at Probation and Parole are authorized to assist probationers with finding jobs and learning about job fairs. As stated by Jennifer Bush, a probation officer in Baton Rouge, stated under oath during her April 27, 2017, deposition:

> Q    So I'm wondering, if someone has told you about someone that has this sort of problem with their employment, here is how you should help them out or here is your responsibilities under that situation or if you just kind of figure it out on your own?
> A    It's not that specific.  I mean, they have certain conditions that they must comply with, and if we can assist them in completing those conditions, then we are willing to do that.  But at the same time, they're adults, so we are not required to say find them a job.  We can help assist them with -- there was a job fair yesterday, so I made contacts to a lot of my offenders telling them about the job fare [sic], and it's their responsibility.  Now, if I weren't doing anything to assist them, then that would be an issue, but it's not as black and white as we have to do X, Y and Z. The main thing is to monitor their compliance with the conditions of supervision.

15.    As can be seen from the above statement by Ms. Bush, while the individual assistance that will be provided to any one individual on Probation may differ, officers at Probation and Parole have discretion to provide resources and information on finding jobs and job fairs.

16.    THE STATE OF LOUISIANA is painfully aware of its obligation to accommodate individuals who deaf. According to a document produced by the State of Louisiana, entitled "ADA Deaf

Offenders," this document states on page nine "Other circumstances in which auxiliary (i.e., supporting) aids and services for inmates might be appropriate include:

- Initial intake and classification processing

- Regularly scheduled health care appointments and programs such as medical, dental, visual, mental health, and drug and alcohol recovery services

- Emergency heath care where having an interpreter would not present an undue burden (e.g., interpreter can arrive at the scene quickly)

- Treatment and other formal programming

- Educational classes and activities"

17.     Further, page sixteen of the document entitled "ADA Deaf Offenders," states "Deaf inmates are entitled to sign language interpreters for religious activities, educational programs, medical consultations, parole hearings, disciplinary actions, counseling and other services through the ADA."

18.     Further page thirty-seven of the document states "Qualified sign language and oral interpreters

An employee who signs "pretty well" or has only a basic familiarity with sign language or finger spelling IS NOT a qualified sign language interpreter.

Likewise, someone who is experienced is sign language but who does not possess the ability to process spoken communication with the proper signs or to observe someone else signing and change their signed or finger spelling communication into spoken words is not a qualified sign language interpreter.

A Department employee should not be allowed to interpret if his or her presence poses a conflict of interest or raises confidentiality and privacy concerns.

On occasion, an inmate may possess the skill level necessary to provide interpreting services; however, the impartiality concerns remain, and in many, if not most, situations, inmate interpreters should not be used due to confidentiality, privacy and security reasons."

19.     According to the meta-data of this document, it was created on August 1, 2008 at 1:22 PM and was last saved on November 3, 2016, at 8:56 AM. According to the meta-data, this document is

"Revision number 148."

20.     As the "ADA Deaf Offenders" document and accompanying meta-data make perfectly clear, the Louisiana Department of Public Safety and Corrections is perfectly aware of its obligation to accommodate persons who are deaf or hard of hearing.

21.     Upon information and belief, despite DEFENDANTS' awareness of their obligation to accommodate persons who are deaf, MR. HUGHES was not provided with a qualified sign language interpreter throughout his time on Probation.

22.     Upon information and belief, MR. HUGHES' time on Probation ended in September of 2017, when he was arrested and incarcerated.

23.     Upon information and belief, throughout the time he was on Probation, MR. HUGHES was not afforded an equal opportunity to engage in the services offered by DEFENDANTS.

24.     Upon information and belief, throughout the time he was on Probation, MR. HUGHES was not afforded an equal opportunity to determine how he would attend his Probation service, what his obligations were, what he reporting requirements were, and the specifics activities and conduct that he was allowed to participate in and the specific activities and conduct that he was not allowed to participate in.

25.     Upon information and belief, throughout the time he was on Probation, MR. HUGHES was not afforded an equal opportunity to obtain the individual assistance that officers at Probation and Parole are able to provide, such as assistance with finding jobs and information on the availability of job fairs.

26.     Due to DEFENDANTS' failure to provide an interpreter or other effective auxiliary aid, MR. HUGHES suffered from the denied ability to understand the terms, conditions, and requirements of his probation or parole. Further, MR. HUGHES was denied the ability to obtain individualized

assistance obtaining information from his Probation officers, such as assistance with finding jobs and information on the availability of job fairs.

27.    Due to DEFENDANTS' failure to provide an interpreter or other effective auxiliary aid, MR. HUGHES also suffered invasion of his civil rights.

28.    DEFENDANTS were aware that MR. HUGHES is deaf and requires a sign language interpreter to effectively communicate.

29.    Upon information and belief, MR. HUGHES' Probation officer never utilized an ASL interpreter to explain the terms and conditions of his probation or parole to MR.

30.    Upon information and belief, DEFENDANTS were aware of MR. HUGHES's obvious disability.

31.    Upon information and belief, DEFENDANTS' staff failed to undertake any meaningful assessment of MR. HUGHES's communication needs and abilities.

32.    Upon information and belief, DEFENDANTS' staff ignored MR. HUGHES's request regarding his communication needs and abilities.

33.    Upon information and belief, DEFENDANTS often forced MR. HUGHES to attempt to communicate through either lip-reading or reading or hand writing in English, which are not effective modes of communication for MR. HUGHES in a legal setting.

34.    Upon information and belief, as a result of DEFENDANTS' failure to ensure effective communication with MR. HUGHES, he received services that were objectively substandard and that were inferior to those provided to parolees or probationers who are hearing and he was subjected to discriminatory treatment because of his disability.

35.    In order to establish standing for injunctive relief, MR. HUGHES must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or

imminent, not conjectural or hypothetical."

36.     The Supreme Court in *Spokeo, Inc.* recently held that concreteness as a discrete requirement for standing refers to the reality of an injury and harm that is real (i.e. not abstract), though that harm need not necessarily be tangible. 136 S. Ct. 1540, 1548 – 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) (THOMAS, J., concurring).

37.     MR. HUGHES is currently serving a two-year sentence, with credit for time served. Accordingly, MR. HUGHES reasonably expects that he will be released from prison within at least sixteen months.

38.     Accordingly, MR. HUGHES anticipates that, by the time this case proceeds to trial, he will either have been released or will be months away from being released.

39.     In any event, MR. HUGHES has an "actual or imminent" date that the harm will resume. Specifically, MR. HUGHES anticipates that the harm will resume as soon as he is released in at least sixteen months.

40.     Further, MR. HUGHES' harm is "actual" and is not abstract. MR. HUGHES has suffered this exact harm (DEFENDANTS' failure to accommodate) in the past and he reasonable anticipates that he will suffer the harm again upon his release.

41.     DEFENDANTS intentionally discriminated against MR. HUGHES; additionally, DEFENDANTS intentionally discriminated against MR. HUGHES with deliberate indifference to his rights and to MR. HUGHES's communication needs; DEFENDANTS' discrimination has caused MR. HUGHES invasion of his civil rights and to endure loss of liberty, humiliation, fear, anxiety, isolation, guilt, and emotional distress.

## CLAIM 1: VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

42.     MR. HUGHES repeats and realleges all preceding paragraphs in support of this claim.

43.    At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12131, et seq. has been in full force and effect and has applied to DEFENDANTS' conduct.

44.    At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to DEFENDANTS' conduct.

45.    At all times relevant to this action, MR. HUGHES has been substantially limited in the major life activities of hearing, speaking, and seeing, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

46.    THE STATE OF LOUISIANA is a public entities within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1).

47.    Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

48.    Federal regulations implementing Title II of the ADA provide that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

49.    Federal regulations implementing Title II of the ADA further provide that "a public entity shall operate each service, program, or activity so that the service, program or activity, when viewed in

its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

50.    Federal regulations implementing Title II of the ADA further provide that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

51.    Federal regulations implementing Title II of the ADA further provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary," and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

52.    DEFENDANTS discriminated against MR. HUGHES, on the basis of disability, in violation of Title II of the ADA and its implementing regulations.

53.    MR. HUGHES is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs (including expert expenses), and compensatory and nominal damages pursuant to Title II of the ADA.

## CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

54.    MR. HUGHES repeats and realleges all preceding paragraphs in support of this claim.

55.    At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to DEFENDANTS' conduct.

56.    At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to DEFENDANTS' conduct.

57.    At all times relevant to this action, MR. HUGHES has had substantial limitations to the

major life activities of hearing, speaking, and seeing and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

58.    At all times relevant to this action, DEFENDANTS' have been offering programs, services, activities, or accommodations receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

59.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

60.    The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

61.    DEFENDANTS discriminated against MR. HUGHES, on the basis of disability, in violation of 29 U.S.C. § 794.

62.    MR. HUGHES is therefore entitled to seek and recover compensatory and nominal damages for the injuries and loss he sustained as a result of DEFENDANTS' discriminatory conduct as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

63.    MR. HUGHES is further entitled to injunctive relief, as well as an award of attorneys' fees, and costs (including expert expenses) pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** MR. HUGHES respectfully prays that this Court grant the following relief:

a.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that DEFENDANTS' policies, procedures, and practices have subjected MR. HUGHES to

unlawful discrimination in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

    b.   Issue an injunction forbidding DEFENDANTS from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of DEFENDANTS' facilities, services or programs;

    c.   Issue an injunction ordering DEFENDANTS:

        i.   to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against MR. HUGHES or other deaf or hard of hearing individuals and their companions by failing to provide effective communication;

        ii.   to develop, implement, promulgate, and comply with a policy requiring that a certified in-person legal ASL interpreter be provided to all deaf or hard of hearing individuals for effective communication in all services offered by DEFENDANTS;

        iii.   to develop and implement a new system, or integrate into a currently existing system a means of identifying parolees as Deaf, Deaf Blind, Deaf Disabled, Hard of Hearing, and other persons with other disabilities;

        iv.   to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

        v.   to train all its employees, staffs, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA and the RA;

   d.   Award to MR. HUGHES:

        i.   Compensatory and nominal damages from the STATE OF LOUISIANA pursuant to the ADA and the RA;

        ii.   Reasonable costs (expert expenses) and attorneys' fees pursuant to the ADA and the RA;

iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

iv. Any and all other relief that this Court finds necessary and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: May 19, 2017

Respectfully Submitted,

Bizer & DeReus
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By:/s/ Garret S. DeReus
    Garret S. DeReus